IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| ACCOHANNOCK INDIAN TRIBE, )<br>THE ACCOHANNOCK INDIAN )<br>TRIBE, INC. and MICHAEL J. HINMAN, )<br>    Plaintiffs, )<br>)<br>vs. )<br>)<br>CLARENCE TYLER, )<br>JERRY WIMBROW, BILLY TAPMAN, )<br>JEAN LAUGHMAN, VIVIAN TYLER, )<br>SANDI ENNIS, JULIE GILROY, )<br>KENNY GILROY, and DIANE BALDWIN,)<br>real parties in interest, and )<br>HONORABLE SIDNEY S. CAMPEN, JR., )<br>JUDGE, CIRCUIT COURT FOR )<br>SOMERSET COUNTY, in his )<br>official capacity )<br>    Defendants. ) | Case No.: _____<br><br><br><br><br><br><br><br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

COMPLAINT

The Accohannock Indian Tribe, The Accohannock Indian Tribe, Inc., and Michael J. Hinman, plaintiffs, complain of Clarence Tyler, Jerry Wimbrow, Billy Tapman, Jean Laughman, Julie Gilroy, Kenny Gilroy, and Diane Baldwin, real parties in interest, and the Honorable Sidney S. Campen, Jr., Judge, Circuit Court for Somerset County, in his official capacity, and show the Court as follows:

I.
PARTIES

1. The Accohannock Indian Tribe (the "Tribe") is an Indian tribe recognized by the State of Maryland, that has existed for time immemorial. It is "a body of Indians of the same or a similar race, united in a community under one leadership or government, and inhabiting a particular though sometimes ill-defined territory." They are "the modern-day

successors" to a historical sovereign entity that exercised at least the minimal functions of a governing body. It has not heretofore applied for recognition by the United States and has, therefore, neither been granted nor denied federal recognition under 25 C.F.R. Part 83.

2. The Accohannock Indian Tribe, Inc. (the "Tribal Corporation") is a Maryland nonstock corporation, the membership of which is limited to blood descendants of the Accohannock Indian Tribe, and which functions as an arm of the Tribe;

3. Michael J. Hinman is a member of the Accohannock Indian Tribe, is chairman of the Tribe and of the Tribal Corporation, and is a citizen of Maryland. Hinman is a "person" with standing to bring claims for violations of 42 U.S.C. §§ 1983 and 1985.

4. Clarence Tyler is citizen of Maryland and, although he is a descendant of Accohannock Indians, his membership in the Tribe and the Tribal Corporation was terminated as a result of his public statement in the presence of Maryland public officials of his intention to split the Tribe and other actions against the interests of the tribe.

5. Jerry Wimbrow is a citizen of Virginia and has no blood relationship to any Accohannock Indians.

6. Billy Tapman is a citizen of Virginia and has no blood relationship to any Accohannock Indians.

7. Jean Laughman is a citizen of Virginia and has no blood relationship to any Accohannock Indians.

8. Vivian Tyler is a citizen of Maryland and has no blood relationship to any Accohannock Indians.

9. Sandi Ennis is a citizen of Maryland and has no blood relationship to any Accohannock Indians.

10. Julie Gilroy is a citizen of Virginia and has no blood relationship to any Accohannock Indians.

11. Kenny Gilroy is a citizen of Virginia and has no blood relationship to any Accohannock Indians.

12. Diane Baldwin is a citizen of Virginia and has no blood relationship to any Accohannock Indians.

13. The Honorable Sidney S. Campen, Jr. ("Judge Campen"), is a Maryland citizen and is the judge assigned to a case entitled, *Accohannock Indian Tribe, Inc. vs. Michael J. Hinman, Sr.,* C-l9-CV-20-000075, In the Circuit Court for Somerset County, Maryland, a case that is currently on appeal before the Maryland Court of Special Appeals (No. CSA-REG-0727-2021). Judge Campen is named in this case only in his official capacity; references in this Complaint to the "Defendants" do not include Judge Campen unless he is specifically named.

## II.
## JURISDICTION

13. This Court has jurisdiction under 28 U.S.C. § 1331 and 1362 in that it involves an action arising under the Constitution, laws, or treaties of the United States. This Court further has authority to provide the relief requested under the Supremacy Clause, U.S. Const. art. VI, cl. 2, the Fourteenth Amendment to the U.S. Constitution, 28 U.S.C. §§ 1651, 2201, and 2202, and its inherent equitable authority. The Court also has jurisdiction under 28 U.S.C. § 1964(c) and supplemental jurisdiction under 28 U.S.C. § 1367.

## III
## FACTS

14. The Accohannock Indian Tribe is one of the oldest historic tribes in Maryland. Captain John Smith encountered them in his expeditions up the Chesapeake Bay and

its tributaries in June 1608, and descendants of those Accohannocks have lived in and around Crisfield, Somerset County, Maryland ever since.

15. Although the Tribe does not have a reservation, its members have existed as a distinct community since before European settlement through the present.

16. In the 1990s, Ann Buck MacKay and other Accohannock descendants, formally organized a Maryland non-stock corporation named The Accohannock Indian Tribe, Inc., to carry on the activities of the Tribe while it sought formal recognition from the State of Maryland. The Tribal Corporation has since acted as an arm of the Tribe; in fact, the Tribe has made no differentiation between the activities of the Tribe and those of The Accohannock Indian Tribe, Inc.

17. Michael Hinman, Chairman of the Tribe, acted as petitioning agent to seek the State of Maryland's formal recognition under Maryland State Government Code 9.5-309(c). By Executive Order adopted December 19, 2017, Governor Lawrence J. Hogan, Jr., on behalf of the State of Maryland, formally recognized the Accohannock Tribe's Maryland Indian status. The recognition order provides, "The Accohannock Tribe and its members shall be accorded all the rights and privileges to which formal State recognition of the Accohannock Tribe's Maryland Indian status entitles them." COMAR 01.01.2017.31 (January 5, 2018).

18. The "Wolf Clan" is a group of persons who have no common ancestry, but share an interest in Native American ways; they began to associate with one another when they affiliated with and infiltrated the "Wolf Clan" of another Indian Tribe, the Assateagues, in the 1990s. It was led by Diane Baldwin. The Wolf Clan separated from the Assateagues and continued as a separate and distinct organization. In the early 2000s, the Wolf Clan began to volunteer with the Accohannock Tribe in connection with some of its public activities. In this

Complaint, Wolf Clan refers to all of the Defendants except Judge Campen. The Wolf Clan also includes certain other persons not named in this Complaint, including John T. Baldwin, Jr., Bruce Miller, Carolyn Miller, Tiffany Miller, Julianne Shadeo, Benjamin Miller, Minnie Sue, Carol Blout, Kaitlyn Ennis, Cherie Green Osborn, Billy Osborn, Kit Layton, Grace Ostrom, Matt Ostrom, and Jeff Gregory (the "Unnamed Wolf Clan Members").

19. Michael Hinman, an Accohannock Tribal member, has been involved in the Accohannock Indian Tribe, Inc. from its formation until the present. He became Chairman of the Accohannock Tribe on March 10, 2015.

20. In October 2015, the Tribe, pursuant to a longstanding custom of offering persons who are not blood members of the Tribe the opportunity to participate in many aspects of Tribal life, held a ceremony where certain Wolf Clan members were made "appointees" to assist the Tribe with its activities. Because the Constitution of the Tribe limits formal membership in the Tribe to persons who have a demonstrated Accohannock ancestry, the appointees were ineligible to be members of the Tribe as that term is applied in the Tribal Constitution (entitled the Great Law of the Accohannock Indian Tribe) (hereinafter, the "Great Law").

21. In December 2015, Chairman Hinman, acting as the Chairman and petitioning agent for the Accohannock Indian Tribe, submitted to the Maryland Commission on Indian Affairs a request for recognition of Maryland Indian Status for the Accohannock Indian Tribe. This petition did not identify the Wolf Clan appointees as members of the Tribe.

22. However, because some Wolf Clan volunteers were given membership cards and were sometimes referred to as "appointed members," they began to assert themselves as having the rights of true blood members and to challenge the Tribe's leadership. Recognizing

the danger that these persons posed to the Tribe, the Council terminated the Wolf Clan's appointments on June 28, 2017.

23. After being expelled from the Tribe, the Wolf Clan conspired to seize control of the Tribe's assets by improper means.

24. On or about July 13, 2017, Clarence Tyler and Vivian Tyler, who at the time were members of the Tribe, knowingly executed a scheme or artifice to obtain moneys, funds, credits, assets, securities, or other property under the custody or control of, a financial institution (PNC Bank), by falsely representing that he had the authority of the Tribe to remove Michael Hinman from the Tribe's bank account and add himself as a signer of the account. Tyler had never been authorized to take this action by the Tribal Council. This action was a violation of 18 U.S.C. 1344.

25. The Wolf Clan, along with Clarence Tyer and Vivian Tyler, began to conspire to unlawfully appropriate the property of the Tribe to themselves. They organized a sham election that had no authority or sanction from the Council or under the Constitution. None of the incumbent Council members and almost none of the enrolled members of the Tribe participated. Wimbrow, Tyler and Baldwin, along with defendants Billy Tapman, Jean Laughman, Vivian Tyler, Sandi Ennis, Julie Gilroy, and Kenny Gilroy, claimed to have become officers of the Tribe and the Tribal Entity through their farcical "election."

26. On or about October 30, 2019, Clarence Tyler, having devised or intending to devise a scheme or artifice to obtain money or property by means of false or fraudulent pretenses, representations, or promises, transmitted or caused to be transmitted by means of wire in interstate commerce, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, by causing a false and fraudulent document to be transmitted

to the Maryland State Department of Assessments and Taxation purporting to name him Resident Agent of the Tribe even though the lawful Council of the Tribe never gave him authority to do so. This action was a violation of 18 U.S.C. 1343 (wire fraud).

27. On or about October 30, 2019, Defendants, pursuant to their scheme to obtain money or property by means of false or fraudulent pretenses, representations, caused the United States Postal Service to deliver a letter addressed to Timothy Howlett falsely representing that Ashley Bosche was "general counsel for the Accohannock Indian Tribe, Inc." and directing that Mr. Howlett mail his monthly payments for $426.39 to Vivian Tyler in violation of 18 U.S.C. 1341 (mail fraud).

28. On or about November 1, 2019, Jerry Wimbrow, Vivian Tyler, Wendy Guy, Clarence Tyler, John Baldwin, and Diane Baldwin, traveled in interstate commerce to promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity, namely trespass and burglary in the fourth degree (Md. Code – Crim. L. 6-205(b)) by causing a locksmith to gain entry, then removing the locks and replacing them with locks to which the Tribe had no keys.

29. On May 18, 2020, Defendants, Wimbrow, Tyler, and Baldwin, purporting to act as the Tribal Council of the Tribe, filed suit in the Circuit Court of Somerset County, Maryland against Michael J. Hinman, Chairman of the Tribe. The Unnamed Wolf Clan members were not parties to the suit.

30. The suit filed by Wimbrow, Tyler and Baldwin (ostensibly in the name of the Tribal Corporation) involved only Mr. Hinman; no other members of the Tribe or members of the actual Tribal Council (of the Tribe or the Tribal Corporation) were joined as defendants or

participated in the litigation even though Defendants knew the identity of the other Tribal Council members.

31. Mr. Hinman asserted as defenses Tribal Immunity, the non-interference doctrine, as well as the absence of the Tribal Council as necessary parties.

32. On or about April 9, 2021, Judge Campen entered a partial summary judgment order "concluding that the Wolf Clan are members of the Tribe." A copy of this Order is attached as Exhibit 1.

33. On June 21, 2021, after a trial in which the Tribe and the Tribal Corporation was not a party and did not participate, Judge Campen signed an Order purporting to appoint in place of the Tribe's incumbent Tribal Council an "Interim Administration" consisting of Jerry Wimbrow as Chairman, Billy Tapman as Vice-Chairman, Jean Laughman as Secretary, Vivian Tyler as Treasurer, and Emily Brothers, Sandi Ennis, Julie Gilroy, and Kenny Gilroy as Tribal Council members. Judge Campen's order also purports to declare Clarence Tyler as Chief and Diane Baldwin as the Senior Clan Mother. Judge Campen also held that the Tribe, by virtue of the actions of the plaintiffs in that action, had waived the Tribe's sovereign immunity. A copy of Judge Campen's Order is attached as Exhibit 2. In the Order, Judge Campen explicitly retained jurisdiction over the implementation of his Order.

34. After Judge Campen's order was entered (which Mr. Hinman has appealed to the Maryland Court of Special Appeals), defendants have acted under color of this Order to lock the Tribe's lawful Council and members out of its Cultural Center in Crisfield, Maryland—a desanctified church building that was donated to the Tribe through the efforts of Chairman Hinman and was deeded to the Tribal Corporation. They have also published announcements in the newspaper asserting that they are the proper Council of the Tribe, and have demanded that

Mr. Timothy Howlett, who is indebted to the Tribe on a mortgage and whose payments are one of the Tribe's main income sources, remit monthly payments to them rather than to the Tribe's government. They have also mailed letters to tribal members claiming that a Tribal Election will be held in October 2021. These actions are creating confusion in the community at large and the Tribal community, undermining the Tribe's ability to function, and the Tribe's very survival.

36. Plaintiffs have the right, based on the Supremacy Clause, to govern their Tribe and the Tribal Corporation in a manner that is free from state interference except to the limited extent allowed by Congress in the exercise of the United States' plenary authority over Indian affairs. No act of Congress allows the State of Maryland to exercise civil adjudicatory jurisdiction over the Accohannock Indian Tribe and its individual members for actions relating to the membership of the Tribe or its elections and government. Nonetheless, Defendant Judge Campen has ordered that a group of non-Accohannock Indians conduct and preside over a Tribal election including non-Accohannock Indians as voting members and has entered orders ostensibly vesting them with the authority of the Tribal Council.

36. Plaintiffs are suffering harm at the hands of Defendants insofar as Defendants have instituted and are allowing the *Hinman* lawsuit to proceed in Maryland state court despite the fact that (i) federal law prohibits the State of Maryland from exercising civil jurisdiction over the suit, and (ii) Plaintiffs have sovereign immunity against the claims asserted. If the *Hinman* lawsuit and Judge Campen's Order, over which he has retained jurisdiction, are allowed to proceed intact, Plaintiffs will suffer extreme hardship and irreparable harm by having to risk further deprivation of their rights of sovereignty and to participate in further proceedings in a state court that lacks subject matter jurisdiction.

37. Remedies at law in the form of monetary damages are inadequate. Plaintiffs will suffer irreparable harm from which they cannot recover if the *Hinman* lawsuit is allowed to proceed in the Maryland state court and the Court-mandated election is allowed to proceed. This action for injunctive relief is Plaintiffs' only means for securing adequate relief.

38. A State court's assertion of jurisdiction over the Tribe and its members and to impose non-Accohannock members and a court-ordered election under the supervision of non-Accohannock persons deprives the Plaintiffs of their federal right to engage in conduct free from the jurisdiction of the State.

39. The legitimate government of the Tribe brings this action to prohibit the continuing violation of its sovereignty and to seek an order prohibiting the Defendants from interfering with the Tribe and its property.

## COUNT I
## DECLARATORY JUDGMENT
## (28 U.S.C. § 2201)

40. Plaintiffs incorporate Paragraphs 1 through 39.

41. The United States Constitution, along with a long-standing body of federal statutory and decisional law prohibits state courts from exercising jurisdiction over suits brought against Indian tribes, tribal members, or tribal entities arising, particularly those that interfere with the tribes' rights to determine their membership and of self-government. As a matter of federal law, Indian tribes, tribal officers, and tribal commercial entities are not subject to suit unless the tribe has waived sovereign immunity or Congress has expressly authorized the action. "Tribal immunity is a matter of federal law." *Kiowa Tribe v. Mfg. Techs. Inc.,* 523 U.S. 751, 756 (1998). The U.S. Supreme Court has said that tribal sovereign immunity is a jurisdictional barrier to a court's "exercise of judicial power." *United States v. U.S. Fid. Guar. Co.,* 309 U.S. 506, 514

(1940). An "essential attribute" of sovereign immunity is the "entitlement not to stand trial." *Mitchell v. Forsyth,* 472 U.S. 511, 525 (1985). "The entitlement is an immunity from suit rather than a mere defense to liability; and … it is effectively lost if a case is erroneously permitted to go to trial." *Id.* at 526 (emphasis in original).

42. There is no resolution or ordinance duly adopted by the Tribal Council that "specifically" waives the Tribe's sovereign immunity from suit or the derivative immunity of Chairman Hinman and the Tribal Corporation.

43. Plaintiffs seek a declaration that the Tribe is immune from suit, that the Accohannock Indian Tribe, Inc. is an arm of the Tribe and is, therefore, clothed with the same immunity as the Tribe, that Mr. Hinman, as Chairman of the Tribe and the Tribal Corporation, is clothed with the immunity of the Tribe, that the Tribe and the Tribal Corporation have not waived sovereign immunity, and that the Order entered by Judge Campen is null and void as to both the Tribe and the Tribal corporation, and does not authorize Defendants to exercise any dominion or control over the Tribe or the Tribal Corporation or its property, including, but not limited to their bank accounts, the promissory note payable by Timothy Howlett to the Tribal Corporation, and the Tribe and Tribal Corporation's cultural center in Crisfield, Maryland, and that the Orders entered by Judge Campen, namely the partial summary judgment order and the final judgment, in fact do not establish any members of the Wolf Clan with the rights of membership in the Tribe or the Tribal Corporation and do not confer on Defendants, Clarence Tyer, Vivian Tyler, Jerry Wimbrow, Diane Baldwin, Billy Tapman, Jean Laughman, Sandi Ennis, Julie Gilroy, and Kenny Gilroy any governmental authority or property rights over the Tribe or the Tribal corporation.

## COUNT II
## INJUNCTIVE RELIEF

44. Plaintiffs incorporate Paragraphs 1 through 43.

45. Because the Constitution of the United States vests in Congress the sole authority to regulate Indian tribes, the Order and the partial summary judgment, which declares non-Accohannock persons to be members of the Tribe and appoints non-Accohannock Indians as an "interim Council," touches on the most fundamental rights of an Indian tribe—the ability to exclude nonmembers and the ability to exercise self-government without interference, and is illegal. The Court's retention of ongoing jurisdiction, and the ongoing activities of the Defendants under color of this Order, are causing the Tribe to sustain ongoing irreparable harm that, if not enjoined, threaten the very survival of the Tribe. The detriment to the Defendants from an injunction is outweighed by the harm that the Tribe will incur if an injunction is not entered. Further, the public interest will be served by the entry of an injunction restraining the Defendants from interfering in the Tribe's enjoyment of its property rights and self-government. THEREFORE, the Tribe requests from the Court an Order directed to the Wolf Clan Defendants and those acting in active concert with them providing as follows:

1. That the Wolf Clan Defendants are enjoined and prohibited from entering onto the Accohannock Indian Tribe's cultural center in Crisfield, Maryland;

2. That the Wolf Clan Defendants are enjoined and prohibited from interfering with any of the Tribe's assets, including, but not limited to, bank accounts held in the name of The Accohannock Indian Tribe or The Accohannock Indian Tribe, Inc., or debts and other obligations owed to the Accohannock Indian Tribe or The Accohannock Indian Tribe, Inc., including, but not limited to, the debt owed by Timothy Howlett;

3. That the Wolf Clan Defendants are enjoined and prohibited from holding any "election" purported to be in the name of the Accohannock Indian Tribe or The Accohannock Indian Tribe, Inc.

4. That the Wolf Clan Defendants account for and return to the Tribe all monies and other property of Accohannock Indian Tribe or The Accohannock Indian Tribe, Inc., including, but not limited to, money obtained from any bank account in the name of Accohannock Indian Tribe or The Accohannock Indian Tribe, Inc., and any money received from Timothy Howlett.

5. That the Wolf Clan Defendants are enjoined from representing and holding themselves out as The Accohannock Indian Tribe or The Accohannock Indian Tribe, Inc.; and

6. That Judge Campen refrain from taking any action to enforce his Order of April 9, 2021 "concluding that the Wolf Clan are members of the Tribe" and his Order dated June 21, 2021.

## COUNT III
## RACKETEER-INFLUENCED CORRUPT ORGANIZATIONS ACT

46. Plaintiffs incorporate Paragraphs 1 through 45.

47. Plaintiffs were injured in their business or property by reason of a violation of 28 U.S.C. § 1962 by the Wolf Clan defendants (all defendants except Judge Campen).

48. Plaintiffs seeks threefold the damages they have sustained and the cost of the suit, including a reasonable attorney's fee.

THEREFORE, plaintiffs demand judgment against the Wolf Clan defendants for actual damages, enhanced statutory damages, attorney's fees, costs of court, and such other and further relief at law or in equity to which they are entitled.

## COUNT IV:

### EQUAL RIGHTS UNDER LAW (BY HINMAN ONLY)
### (42 U.S.C. § 1983)

49. Plaintiff Hinman incorporates Paragraphs 1 through 48.

50. Defendants (not including Judge Campen, who has judicial immunity), under color of law, deprived Hinman of rights, privileges, or immunities secured by the Constitution and laws of the United States (namely, the right of an officer of a Tribe to be immune from suit in state court for actions in his official capacity), and this deprivation was the proximate cause of damages to Hinman, including, but not limited to, attorney's fees, emotional distress, embarrassment and humiliation.

THEREFORE, Hinman asks for judgment against the Defendants (excluding Judge Campen) jointly and severally for such compensatory damages as he may be entitled to receive together with his attorney's fees (expended in State court and in this Court under 42 U.S.C. § 1988) and costs of court.

Respectfully submitted,

*/S/ John T. Brennan*
John T. Brennan
Maryland Federal ID No. 15845
The Brennan Law Firm, LLC
1997 Annapolis Exchange Parkway
Suite 300
Annapolis, MD 21401
Telephone: (410) 266-3970
Facsimile: (410) 721-4284
tbrennan@brennan-law.us

*Attorney for the plaintiffs*